IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

GRACIE HARSHAW                                                        PLAINTIFF

V.                                        CASE NO. 11-CV-1060

MICHAEL J. ASTRUE,
Commissioner of Social Security,
in his Official Capacity,
RAYE LOYD in her Official and
Individual Capacities, and
DEBRA MARTIN in her Official
and Individual Capacities                                            DEFENDANTS

## ORDER

Before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment on behalf of Separate Individual Defendants. (ECF No. 35). Plaintiff brought this action against the Commissioner of the Social Security Administration ("SSA") in his official capacity and against Defendants Raye Loyd and Debra Martin in their official and individual capacities. The present motion pertains only to the claims against Defendants Loyd and Martin. Defendants assert that the claims against them must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or as a matter of law under Fed. R. Civ. P. 56. Plaintiff has filed a response in opposition. (ECF No. 40). Defendants have filed a reply. (ECF No. 44). The matter is ripe for the Court's consideration. As explained below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

This case involves various claims of employment discrimination and constitutional violations. Plaintiff is a former employee at the SSA and held the position of Operations Supervisor in the El Dorado, Arkansas District Office. She claims she was denied a promotion to the District Manager position based on her race and gender. She also alleges that she was denied

the promotion for exercising her First Amendment right of free speech, and that her Fifth Amendment substantive and procedural due process rights were violated as a result of Defendants' conduct during the promotion process.

Defendant Loyd is the former District Manager at the El Dorado District Office. She was Plaintiff's direct supervisor, and Defendant Martin was Defendant Loyd's supervisor. According to Plaintiff, she had always received positive performance evaluations during her 21 years with the Agency. Therefore, in 2007, when it was announced that Defendant Loyd would be retiring, Plaintiff believed she was next in line for the position. She was mistaken. Defendant Loyd apparently did not recommend her for the position.

Plaintiff claims that one of the reasons she was not recommended is because she had previously expressed a concern of possible age discrimination within the Agency at a manager's meeting. It was after that meeting that Plaintiff began the interview stage of the promotion process. During that process, Defendant Loyd began to express, for the first time, certain deficiencies in Plaintiff's abilities as a potential manager. Also around this time, Defendant Martin notified Norma Daniels, the selecting official, of certain "negative observations concerning Plaintiff's performance," and her alleged propensity to create "problems in the office." (ECF No. 1). Plaintiff claims that Defendants' behavior essentially ruined her reputation within the Agency and foreclosed any future opportunities for advancement.

Nevertheless, during the interview process, Plaintiff was placed on a short list of qualified applicants known as the Best Qualified List, or BQL. The BQL apparently included a handwritten notation indicating the race of each qualified applicant. Plaintiff was the only African-American candidate on the list.

Defendant Martin was responsible for interviewing Plaintiff for the promotion. During the interview, there was a discussion of who Plaintiff might select to fill her position as Operations Supervisor if she was promoted to the District Manager position. Defendant Martin expressed a "need for diversity" in the office and suggested that, if given the opportunity, Plaintiff should select a specific white male for the position. (ECF No. 1). When Plaintiff disagreed with Defendant Martin's recommendation, Defendant Martin allegedly became dissatisfied with Plaintiff.

Plaintiff was later denied the promotion, and the position was offered to one of the white male candidates on the BQL. Based on this series of events, particularly Defendant Martin's focus on the racial make-up of the office, Plaintiff believes she did not receive the promotion because of her race. She also claims that she was retaliated against for speaking up about the Agency's alleged age discrimination at the manager's meeting. Lastly, she asserts that Defendants' negative comments to Ms. Daniels during the selection process caused her to suffer a deprivation of her procedural and substantive due process rights.

## DISCUSSION

For purposes of Defendants' motion, Plaintiff's claims can be broken down into two categories: (1) her Title VII claims; and (2) her constitutional claims. Defendants' motion is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

A motion to dismiss pursuant to Rule 12(b)(6) should be granted when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The complaint must

---

[1] The Court notes Defendants' argument in the alternative that, if the Court finds dismissal improper under Rule 12(b)(6), dismissal is appropriate under Fed. R. Civ. P. 56. In other words, if Plaintiff's claims are not dismissed under Rule 12(b)(6), Defendants urge the Court to look outside of the pleadings and find in Defendants' favor as a matter of law. The problem with this assertion is that Defendants have completely failed to meet their burden under Rule 56 of showing that there is no genuine issue of material fact remaining for trial. Indeed, they have not even provided a "statement of undisputed facts" as required by Local Rule 56.1. Accordingly, the Court will only address Plaintiff's claims under the standard set forth in Rule 12(b)(6).

be liberally construed in the light most favorable to the plaintiff, and a court must accept as true all factual allegations in the complaint, even if doubtful. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955 (2007). Dismissal should be granted when the plaintiff has not proffered "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A complaint need not contain "detailed factual allegations," but it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

In this case, Plaintiff's only claims that survive dismissal are the Title VII claims against Defendants Loyd and Martin in their official capacities. Her Title VII claims against them in their individual capacities and her constitutional claims are subject to dismissal.

## I.      Title VII Claims

Defendants argue that Plaintiff's Title VII claims must be dismissed because "the only proper party in a Title VII case involving a federal employee is the head of the department, agency, or unit." (ECF No. 36). They cite 42 U.S.C. § 2000e-16(c) in support of this proposition.

The bulk of § 2000e-16(c) sets out a limitations period for federal employees to file a civil action if they have been subjected to racial discrimination by their employer. It also states that, in such civil actions, "the head of the department, agency, or unit, as appropriate, shall be the defendant." *Id*. Defendants interpret this clause to mean that the head of the agency is the *only* proper defendant in such cases. That assertion is incorrect.

While the employer—in this case, the SSA—is alone liable for any violation of Title VII, a supervisory employee may be joined as a party defendant, so long as that employee is viewed as being sued in his capacity as an agent of the employer. *Gary v. Long*, 59 F.3d 1391, 1399

(D.C. Cir. 1995) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Defendants Loyd and Martin are therefore proper defendants in this case to the extent that they are named in their official capacities as agents for the SSA. Plaintiff's claims against them in their individual capacities, however, should be dismissed pursuant to *Gary* and *Busby*.

## II.       Constitutional Claims

Plaintiff's constitutional claims present a more complicated issue. Defendants argue that Plaintiff's First and Fifth Amendment claims are barred by the Civil Service Reform Act ("CSRA") because Plaintiff is a federal employee covered by the Act's comprehensive remedial scheme. Defendants rely on *Bush v. Lucas*, 462 U.S. 367 (1983) to assert that Plaintiff has failed to state a proper claim.

For the Court to properly address *Bush* and its progeny, it is important to first point out that Plaintiff's constitutional claims are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics¸* 403 U.S. 388 (1971). "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). This so-called "*Bivens* action" has two exceptions, or circumstances when a right to recover damages may be improper. *Id.* "The first is when defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Bivens*, 403 U.S. at 396). "The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* (quoting *Bivens*, 403 U.S. at 397).

The Court in *Bush v. Lucas*, 462 U.S. 367 (1983) construed those exceptions rather broadly. The petitioner in *Bush* was a federal employee covered under the CSRA. *Id*. at 369. He brought a First Amendment claim under *Bivens* alleging that he was demoted for making negative public statements about his place of employment, a flight center operated by NASA. *Id*. The Court held that the petitioner could not maintain a *Bivens* action "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id*. at 368. The Court concluded that it would be inappropriate to "supplement that regulatory scheme with a new judicial remedy." *Id*. In other words, the Court found that the CSRA provided federal employees with a sufficient remedial scheme that "encompasse[d] substantive provisions forbidding arbitrary action by supervisors" and had appropriate procedures to redress such improper action. *Id*. at 386.

Since *Bush*, the Court has clarified its ruling. In *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the Court reaffirmed that constitutional claims are barred from judicial review when Congress has otherwise established an elaborate administrative process to redress such claims. This is true "even though the existing remedies do not provide complete relief to the plaintiff." *Id*. at 423. Thus, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id*.

The Eighth Circuit has since addressed this issue in a circumstance similar to this case. In *McIntosh v. Turner*, 861 F.2d 524 (8th Cir. 1988), a federal employee alleged that his employer violated his Fifth Amendment right to due process by failing to consider him for a promotion on a fair and unbiased basis. *Id*. at 525. Based upon *Chilicky*, the court held that the plaintiff's

constitutional claim was barred because he could have sought corrective action against his supervisor through the Office of the Special Counsel ("OCS") of the Merit Systems Protection Board.

Similarly, in this case, Plaintiff brings claims under the First and Fifth Amendment in the context of her federal employment. Like the federal employees in *Bush*, *Chilicky*, and *McIntosh*, Plaintiff's claims are barred because Congress has established a remedial scheme specifically to address the actions of Plaintiff's supervisors, Defendants Loyd and Martin. *See* 5 U.S.C. § 1214. Plaintiff could have availed herself to the OSC process, but instead, chose to bring a *Bivens* action in this Court. Such constitutional claims cannot stand in light of *Bush*, *Chilicky*, and *McIntosh*.

Plaintiff does not dispute that she is a federal employee subject to the CSRA. And she does not argue that the OSC process was somehow unavailable to her. However, she attempts to distinguish *Bush*, *Chilicky*, and *McIntosh* by arguing that, in this instance, the OSC process either fails to provide her meaningful relief, or fails to provide any relief at all.

To Plaintiff's point, an aggrieved employee cannot invoke the OSC process as of right. The Special Counsel has the discretion to decide whether to even institute a proceeding. *See* 5 U.S.C. § 1206. Also, the OSC cannot award any monetary or affirmative relief to an aggrieved employee. Rather, it can only discipline the offending party. 5 U.S.C. § 1207. An additional concern is the fact that, because Defendant Loyd is no longer with the Agency, the relief afforded under the OSC process as to that Defendant is no longer viable.

Although Plaintiff's objections are well-taken, they miss the legal mark. The court in *McIntosh* spoke directly to such objections and expressly rejected them. The court held that the

7

administrative process provided by the OSC bars a *Bivens* action even though it may not provide

a "meaningful remed[y]." *Id.* at 526. The court reasoned that:

> Congress consciously referred to violation of an employee's constitutional rights
> as one of the prohibited personnel practices for which the OSC disciplinary
> process was available. H.R.Rep. No. 1717, 95th Cong., 2d Sess. 131 (1978), U.S.
> Code Cong. & Admin.News 1978, 2723. It did not provide for a damages action
> for such a violation.… Congress knew that wrongs of this kind would occur, and
> it apparently believed that the OSC process would adequately address them.

*Id*;[2] *see also Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (emphasizing that the

relevant inquiry is the "comprehensiveness of the statutory scheme involved, not the 'adequacy'

of specific remedies extended thereunder").

Applying these principles to Plaintiff's constitutional allegations, the Court is compelled

to dismiss her First and Fifth Amendment claims. Plaintiff is a federal employee covered under

the CSRA, and her sole remedy is a petition to OSC. Accordingly, her constitutional claims

should be dismissed.

## CONCLUSION

For the reasons explained above, the Court finds that Defendants' motion should be and

hereby is **GRANTED in part** and **DENIED in part**. Plaintiff's claims brought under Title VII

of the Civil Rights Act are **DISMISSED with prejudice** as against Defendants Loyd and Martin

in their individual capacities. The Title VII claims against them in their official capacities

remain. Plaintiff's First and Fifth Amendment claims against Defendants Loyd and Martin are

**DISMISSED with prejudice**.

**IT IS SO ORDERED**, this 14th day of August, 2013.

/s/Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[2] The court noted further that, in these circumstances, "the result is a sort of presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees." *Id.*